Argued and submitted May 1, affirmed August 8, 1984

# ALSEA VENEER, INC.,
### *Respondent,*

### *v.*

# DEPARTMENT OF REVENUE,
### *Appellant.*

## (TC No. 1773; SC S30232)

687 P2d 137

G. F. Bartz, Assistant Attorney General, Salem, argued the cause for appellant. With him on the briefs was Dave Frohnmayer, Attorney General, Salem.

Kurt Carstens, Newport, argued the cause and filed the brief for respondent.

ROBERTS, J.

Lent, J., dissented and filed an opinion in which Campbell, J. joined.

Peterson, C. J. did not participate in this decision.

## ROBERTS, J.

This is an appeal by the Department of Revenue (Department) from a decree of the Oregon Tax Court wherein it was determined for taxation purposes that the true cash value of machinery and equipment in plaintiff's veneer plant as of January 1, 1981 was $277,000.[1] The defendant Department contended it was worth $579,600. The principal issue is whether the method used by the plaintiff in determining the true cash value of the machinery and equipment should have been accepted by the Tax Court.

In its ten assignments of error the Department claims generally that (I) the Tax Court failed to decide this case within the appropriate statutory and administrative directives, and that, therefore, the Tax Court's findings on the method of valuing the property were erroneous, (II) the Tax Court failed to recognize certain evidence presented by the Department, and (III) the Tax Court erred in accepting certain evidence of plaintiff.

### I.

Plaintiff's appraisal method was based on the resale value of the machinery and equipment on a per piece basis.[2] The resale value was established by comparing sale prices from auctions where used lumber mill machinery and equipment were sold or from dealers of used equipment. Added to this cost was the cost for transporting the machinery to the plant and installing it. Plaintiff also considered that it had little timber supply of its own and relied on contracts for 90 percent of its raw material. This fact would be significant in determining whether the mill could be sold as a going concern or piecemeal.

The Department's appraisal method was based primarily on the replacement cost of new equipment less

---

[1] The machinery and equipment includes:

1. barking center with a Nicholson Barker;
2. a 4 foot lathe line with a Coe lathe and charger;
3. an 8 foot lathe line with a Premier lathe and charger;
4. a bark disposal system with a Jeffrey bark hog;
5. a chip disposal system with a Lamb whole log chipper, a Black Clawson veneer chipper, an Arasmith lily pad chipper, and a Salem core chipper;
6. miscellaneous equipment.

[2] The values assigned to the land and buildings are not at issue.

depreciation plus costs to transport and to install. The Department's method also appraised the mill on a "going concern" basis, that is, valuing the machinery and equipment as if the mill would be sold as an operating entity rather than on the individual sale of each piece of machinery.

The Tax Court, in rejecting the Department's method, said: "This unswerving loyalty to the replacement cost new or reproduction cost approach is clearly misplaced in view of the Supreme Court's ruling in *Portland Canning Co. v. Tax Com.*, 241 Or 109, 404 P2d 236 (1965), and *Astoria Plywood Corp. v. Dept. of Rev.*, 258 Or 76, 481 P2d 58 (1971)." We rejected the replacement cost new less depreciation cost as the sole method of valuation in *Portland Canning Co.* We said:

> "Clearly the dominant note of the legislation is that, if possible, value is to be ascertained in accordance with market value. While the commission has been given power to make regulations setting forth procedures as to how this may be done, it cannot vary the mandate of the law under this guise. If a market existed for the kind of property being assessed, the property had to be evaluated by the market data approach. The commission has no power to permit the evaluation of the property by the exclusive means of the cost approach to determine the value to the owner when a market in fact exists." 241 Or at 113.

In *Astoria Plywood Corp.*, where plywood plant machinery and equipment were appraised, we stated that *Portland Canning Co.* was controlling. The evidence of comparable sales established, in that case, that operating plywood plants with no substantial timber supply are sold on the same basis as plants that are not in operation. The value of the machinery and equipment was set on the sale prices of used machinery and equipment.

■ The Department contends that ORS 308.205 and ORS 308.411, as well as OAR 150-308.205-(A), require an appraisal to consider the property in place as an operating unit. The Department argues that since ORS 308.411 was enacted in 1981, subsequent to both *Portland Canning Co.* and *Astoria Plywood Corp.*, it modifies the holdings in those cases. That statute is irrelevant to this case because ORS 308.411 did not become effective until November 1, 1981, and the date of the instant appraisal is January 1, 1981. We, therefore,

consider the application of only ORS 308.205 and OAR 150-308.205-(A).

ORS 308.205 provides:

"True cash value of all property, real and personal, means the market value of the property as of the assessment date. True cash value in all cases shall be determined by methods and procedures in accordance with rules adopted by the Department of Revenue and in accordance with the following:

"(1)   If the property has no immediate market value, its true cash value is the amount of money that would justly compensate the owner for loss of the property.

"* * * * *"

OAR 150-308.205-(A) provides:

"1.   Definitions:

"a.   Market Value as a basis for true cash value shall be taken to mean the highest price in terms of money which a property will bring if exposed for sale in the open market, allowing a period of time typical for the particular type of property involved and under conditions where both parties to the transaction are under no undue compulsion to sell or buy and are able, willing and reasonably well-informed.

"b.   Immediate market value of property exists when there are sales of comparable property at times and places which are reasonably relevant under the existing circumstances. A 'unit of property' is the item, structure, plant or integrated complex as it physically exists on the assessment date as real or personal property. The market value of a unit of property is not ascertained from the market price of its component materials, such as wood, glass, concrete, pipe, wire, furnaces, elevators, etc., each priced separately as an item of personal property, without regard to its being integrated into the total unit. Similarly, in the appraisal of industrial properties the fixed machinery and equipment comprise an integral part of a manufacturing plant and as such is usually real property. The market value test of such a plant is predicated upon the sales of comparable plants. No market test of unit property exists when there are no sales of comparable property at times and places which are reasonably relevant to the appraisal date and subject property under the existing circumstances. * * *

"Salvage or liquidation sales are indicators of market value only when on the assessment date salvage or liquidation of the subject property is imminent or has actually taken place.

"* * * * *"

ORS 308.205 simply states that true cash value is market value which may be determined in accordance with rules adopted by the Department. The rule provides ·that market value exists where there are comparable sales. It then defines a "unit of property," which we conclude is meant to assist in the determination of whether property is personal or real, and it states that fixed machinery is usually real property. The rule then states again that the market value test for a plant, such as we have in this case, is predicated upon the sales of comparable plants. However, the rule provides that a market test is not established for the unit of property when there are no sales of comparable property.

We cannot agree with the Department that this rule prevents the Tax Court from considering plaintiff's method of evaluating the machinery and equipment. What was anticipated by the rule is precisely what occurred here. There was no evidence of comparable sales of veneer plants; therefore, there was no market test for the unit of property as an operating veneer plant. Under these circumstances an evaluation based on an appraisal of the component parts was appropriate. Indeed, the Department itself used the component parts method in its evaluation of the mill except, of course, the Department did not apply the used equipment prices.

We also reject the Department's argument that plaintiff's use of auction sale prices was the equivalent of salvage or liquidation sales. The evidence established that mills the size of plaintiff's ordinarily purchase machinery and equipment at auctions or from used dealers. The Tax Court specifically stated that "[t]he testimony of plaintiff's witnesses regarding the general practice of small mills to purchase their machinery and equipment at auction or from dealers of used equipment was unrefuted." Our review of the record supports the Tax Court's observation on this point.

We conclude that the method of valuation set forth in our decisions in *Portland Canning Co., supra* and *Astoria Plywood Corp., supra,* was properly applied by the Tax Court in this case.

## II.

The Department next contends that the Tax Court failed to consider certain evidence presented by it, specifically (1) evidence showing that even with used equipment, the appraiser must use new replacement costs for site preparation, engineering, freight, footings, electrical and hydraulic costs and labor and then depreciate those costs the same as in a replacement cost appraisal technique, (2) evidence presented by the Department based on the market for used equipment, and (3) evidence as to the actual cost plaintiff incurred in rebuilding its plant after it was destroyed by fire in 1976.

(1)   Where the value of the machinery and equipment is determined on a per unit basis, the costs of installing must then be added in order to reach a valuation of the machinery and equipment in place and operating. The Department's concern here is that the Tax Court did not accept its estimate of installation costs. The Tax Court noted in its opinion that the parties differed in their estimates of installation costs. Plaintiff's estimate was based on $125 per day per worker and the Department's estimate was based on $29 per hour per worker. The opinion also recognized that there were discrepancies in the estimates of the parties for dismantling equipment, for freight and other costs of installation. The opinion does not specifically address these other costs of installation, which include "footings and cement construction, any underground wiring or piping, engineering costs, interest during construction, management, overhead, power wiring, freight, plumbing, welding, ironwork and all the details that go into taking an isolated machine such as a barker or chipper that may either be new or used and putting it in place" which the Department claims should have been considered.

Our review of the record indicates a substantial difference in how the parties arrived at their respective projections of installation costs. The Department derived its figures by accumulating costs of actual jobs from various erector companies. From these, the Department's appraiser determined number of hours required to install different pieces of equipment. The Department then reached an hourly wage rate based upon information from the Bureau of Labor

Standards and the hourly rate charged by the erectors companies on the presumption that the work would be contracted out. Plaintiff, on the other hand, based its estimate of installation costs on the assumption that the work would be performed by its own employees because they had the necessary expertise. One of the owners of the mill, who has been in the wood products industry since 1965 and who purchases the equipment used in the plant, testified that the figures were based on his actual experience in building and revamping plants. There was also evidence that a plant of the size involved here would not hire an outside erector company to install its equipment because of the cost. Another witness for plaintiff, an owner of another mill who had many years experience in the wood products industry, testified in support of plaintiff's estimate of installation costs. ORS 305.427 requires the Tax Court and this court to find for the party who presented the preponderance of the evidence. We agree with the Tax Court that plaintiff met this burden with regard to evidence of installation costs.

(2)   The Department next contends that the Tax Court failed to consider the evidence it presented on used equipment values. This evidence was contained in a Department appraiser's notes and in the testimony of the appraiser. Plaintiff asserts that the Department did not utilize the used equipment market as an independent mechanism of valuation and cannot now claim that these values counter plaintiff's evidence. Plaintiff argues that the Department presented used equipment values only for comparative purposes to test the approximation of the values determined from the new market with those of the used market. The record bears this out.

The Department's appraiser testified that he considered the used equipment market values in order to compare these costs with the values he established by deducting depreciation from the cost of new equipment. After testimony regarding his method of determining reproduction cost used, he stated that the value of the machinery and equipment under the reproduction cost new method was $595,940 and that the value was $552,690 under the reproduction cost used method. The Department's lawyer then asked, "Did you try to verify your results any other way?" The appraiser then described other methods he used by which he compared the reproduction cost new appraisal. Later in the trial the court

asked the Department's appraiser to delineate the difference between the appraisal approach that the plaintiff had testified to and the Department's. The witness replied that the Department's basic approach was the reproduction cost new approach and then indicated it was "backed up" by using a replacement cost used approach. Under these circumstances neither we nor the Tax Court are required to consider the Department's evidence on used equipment except as it was presented to bolster its reproduction cost new method of valuation.

■ (3) The Department complains that the Tax Court failed to consider the costs actually incurred by plaintiff in rebuilding its plant after a fire in 1976 as more representative of the proper valuation of the property. The Department introduced an exhibit which were notes of the appraiser as to assets contained in a depreciation schedule taken from plaintiff's income tax records. This was a part of the Department's evidence demonstrating that its replacement cost new method of valuation was a truer reflection of the proper valuation. The depreciation schedule itself was not introduced. Mr. Smud, one of the owners of the mill, was called as the Department's witness. He testified that he could not recall whether the appraiser's notes were accurate without the actual depreciation schedule. Colloquy between court and counsel indicated that plaintiff had allowed the Department and assessor access to all plaintiff's records. Counsel for plaintiff argued that the best evidence rule should apply. The court indicated it would consider the evidence for what it was worth. We have considered the evidence but accord it little weight.

### III.

The Department next argues that the Tax Court erred in (1) accepting certain evidence, (2) failing to recognize a conflict in testimony, and (3) finding that timber ownership makes a difference in the value of veneer mills.

(1) The Department specifically objects to the Tax Court's acceptance of plaintiff's exhibit 4 which is an Equipment Value Summary prepared by one of the owners. The summary lists the machinery and equipment, detailing by component parts the larger pieces. It then breaks down the value by "cost, dismantle, freight, install" and arrives at a total for each piece.

The Department's argument is that the summary should not have been accepted because it was based on auction prices. The Department also contends that the values are mere conclusions with no evidentiary value. Plaintiff contends the Department made no objection in the Tax Court to its admission nor made any claim that the summary was insufficient to establish plaintiff's proposed valuation. Plaintiff urges us not to consider the Department's argument now. Be that as it may, we have already concluded, as we pointed out earlier, that the Tax Court properly valued the machinery and equipment on the basis of used machinery and equipment costs, *Portland Canning Co., supra,* and *Astoria Plywood Corp., supra.*

■    We have considered exhibit 4 in conjunction with the testimony of Mr. Clark, an owner, and other witnesses. Mr. Clark testified in some detail about how he acquired information on auction sales. He used brochures to show the court how items are listed for sale[3] and to demonstrate that there "is equipment like that being sold at an auction and there are many buyers there to buy it." This was supported by the testimony of another mill owner, who stated the typical method of purchasing equipment is through auctions. We find this evidence sufficient to persuade us to accept plaintiff's values.

In this same vein the Department contends that plaintiff's freight and installation costs were insufficient to fulfill the required burden of proof. The Department argues that the owners were not appraisers and that, therefore, they failed to recognize and include in their valuation certain costs, such as site preparation and engineering, in their valuation of installation. As we have previously pointed out, plaintiff's valuation of freight and installation costs was based on the standard in the industry of small businesses using their own labor instead of hiring out installation work to construction firms, and we concluded that the evidence supported plaintiff's valuation.

■    (2)    The Department argues that the Tax Court failed to recognize a conflict in testimony. This contention is without merit. When Mr. Noah, the owner of another mill,

---

[3] The brochures were not introduced as evidence.

was testifying, he was asked what percent of the cost new would be recovered from the sale of his own plant. The witness indicated only about one-fifth. The Department then takes a figure stated by the owner of the mill in this case as the value of the component parts, multiplies by five and reaches the figure of $900,000 and then concludes that plaintiff's valuation is in direct conflict with the evidence. Mr. Noah's testimony about his own mill has no bearing on the valuation of the mill in question here without evidence to show there is a relationship between the two mills.

(3) Finally, the Department contends the Tax Court erred in finding that timber ownership makes a difference in the value of veneer mills. The court stated:

> "The court is convinced that an active market for used machinery and equipment does exist and that sales of mills with little or no timber base are usually valued piecemeal. The uneconomic timber contracts held by the plaintiff on the assessment date would further detract from its market value in a 'unit' sale. * * *"

The Department contends that this was not established in the record. We disagree.

Plaintiff's timber contracts were introduced as exhibits. Mr. Clark, an owner, was asked to summarize the importance of the timber contracts to the overall mill operation. In doing so he commented, "a mill is nothing * * * without a timber source." After explaining his experience in other mills regarding the effect of a supply of timber, the witness stated, "It would be pretty hard to run one of these plants without a timber base." Another of plaintiff's witnesses, an appraiser, when asked what factors he would consider when buying a mill, replied, "well, number one, you'd have to have a timber base before you'd want to consider purchasing a mill" and added that without a timber base there isn't any value. He further noted that where timber is available on contract it must be on a basis that is profitable to the operation of the plant. Mr. Clark testified that at the time of the assessment, the contracts they held were not workable because the price was too high and the plant could not make a profit.

This evidence convinces us that the effect of a timber supply on the valuation of the mill must be taken into

consideration. We further utilize this information in determining that this mill could not be sold as an operating unit but only on a piecemeal basis.

For all the foregoing reasons the Tax Court is affirmed.

**LENT, J.,** dissenting.

I cannot agree with the majority that the plaintiff has met its burden of persuasion. Indeed, it seems to me that the majority has treated this appeal as if it were in an action at law, and the inquiry is only whether there is evidence to support the trial judge's findings.

Cases of this kind are tried as an original proceeding in the nature of a suit in equity, ORS 305.425, and the plaintiff has the burden of proof or persuasion, ORS 305.427. The appeal to this court, ORS 305.445, is in accordance with "procedure in equity cases on appeal from a circuit court." This court tries the cause anew upon the record, ORS 19.125(3).

The majority has quoted ORS 308.205 and OAR 150-308.205-(A), and I shall not set them forth again. Those provisions are the standard which must be met by the plaintiff in establishing the value of the property for the purposes of taxation.

The plaintiff taxpayer here relies upon prices fetched at auction for the kind of machinery and equipment involved. The evidence does not satisfy me that the auction sales on which plaintiff relies meet the test of "allowing a period of time typical for the particular type of property involved." When the owner of this kind of property decides to sell at auction, the owner has, of course, decided that the owner will take whatever the high bid may be. In that sense there is a willing seller, but I do not perceive that to be the willing seller to whom the statute and the regulation speak.

All other taxpayers have the right to expect that any given taxpayer's property will not be undervalued so as to cast on them an unfair share of the tax burden. Where an owner of this kind of mill cannot sell the mill as an operating unit because of want of timber ownership and relies upon what his machinery and equipment might bring at auction, he has

taken the position that he will accept whatever the bargain hunter at auction may be willing to pay.

I do not believe that kind of evidence meets the test established by law for valuation for tax purposes, and that evidence does not convince me that it is more probable than not that the true cash value of the property is that for which the taxpayer contends.

Campbell, J., joins in this dissenting opinion.